The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable Robert J. Steigman presiding. Thank you, Mr. Bailiff. This is our case number 4-23-1580, Ruhl Commercial Company, LLC v. RJR Holdings, Inc., and Dr. Kenneth Davis. I ask counsel for the appellant, please state your name. Brian Lee on behalf of the appellant. Thank you, counsel. Counsel for the appellate, please state your name. Mackenzie Blau, counsel for the appellate. Okay, thank you, counsel. On behalf of the appellant, you may commence your argument at this time, Mr. Lee. Thank you, Your Honor. Good afternoon, justices, counsel. May it please the court. My name is Brian Lee on behalf of the appellant, Ruhl Commercial Company. This is simply a case where the trial court made multiple rulings that require reversal. The primary issue with which Ruhl Commercial takes issue is the circuit court's ruling that Ruhl was not the prevailing party entitled to attorney's fees under both the Broker-Lean Act and the commercial listing agreement between the parties. However, that ruling was the result, the product, of other erroneous rulings made by the trial court. The first one was that the trial court erred in holding that the broker commission that was owed to Ruhl Commercial was payable over time and not in a lump sum. That led the trial court to also make a ruling that RJR Holdings had not breached the commercial listing agreement, a finding that was against the manifest weight of the evidence. This court should reverse the circuit court with instructions to enter judgment in favor of Ruhl to deem Ruhl the prevailing party so that Ruhl can seek attorney's fees and costs in the trial court. By way of the factual background of this case, in April 2015, Ruhl Commercial and RJR Holdings enter into a commercial listing agreement. That listing agreement indicates that the sales brokerage commissioned shall be 5% of the sale price. The commercial listing agreement also has a provision about the payment of a commission in the event that the property is leased. That provision says that the commission in that instance is to be 6% of the total net lease of the initial term, have to be paid upon lease execution, have to be paid when the tenant takes occupancy of the property. A few months later, during the lifetime of the commercial listing agreement, RJR and a Dr. Kenneth Davis enter into an agreement regarding the property that is subject to the commercial listing agreement. Purchase price is set at $400,000 plus another $400,000 for the cost of improvements to the property. There's also a provision in that contract that says that if the cost of improvements exceeds $400,000, that that excess will then become part of the purchase price that Dr. Davis is responsible for. Under the contract, Dr. Davis is to make 60 monthly payments on the property and then make a payment once the 60 months is concluded. And after those payments are made, Dr. Davis is to receive title to the property. Now, jumping ahead to February of 2016, RJR sends a letter and a check to Rural Commercial. That letter is from John Wilson, an officer of RJR, and the check is for approximately $434. And it covers what RJR contends is the commission payment based on Dr. Davis' down payment and payments made during the last two months of 2015. The letter from Mr. Wilson has a couple of provisions that are very important. Number one, the letter states that the cost of improvements is not covered by the commercial listing agreement. In essence, RJR is saying that the purchase price is $400,000 flat and that's all it's going to pay commission on. The second provision that's very important in Mr. Wilson's letter is that it states an intent by RJR to make quarterly payments to Rural Commercial, but only in the event that Dr. Davis makes payments to RJR. Rural sends that check back, taking the position that under the general rule, the broker's commission was due in full when the contract for the sale of the property was signed. Subsequently, RJR sends three additional letters, three additional checks. Those checks are dated October of 2016 and November of 2016, and they cover in total the first nine months, the first three quarters of that year. Those subsequent three letters all contain the same two provisions I just mentioned. Number one, that RJR is taking the position that the purchase price is only $400,000. Number two, RJR is only going to pay to the extent that Dr. Davis is making payments. The check amounts, the last three checks, one is for approximately $618. The last two are for approximately $368. Again, these are checks covering three-month periods. And again, Rural taking the position that its entire commission is due and owing sends those checks back as well. In November of 2015, Rural records a notice of commercial real estate broker lien with Davis County, mails a copy of that broker lien to RJR. Now, as far as the procedural history of this case, it's very lengthy. It's what I would consider unique. I'll try to only highlight the portions of it that are relevant to my arguments for reversal. In December of 2016, a month after the broker lien is recorded, Rural files a complaint asserting claims to foreclose the broker lien and also a claim for breach of contract. RJR files an answer denying that commission is due to Rural Commercial and denying it's breached the contract between the parties. After some discovery is conducted, Rural files an amended complaint seeking payment for a commission in an amount just over $46,000. And that amount corresponds to 5% of what the final purchase price is, which ends up being just over $921,000. And that increase is due to the fact that the improvements to the property total just over $521,000, not $400,000. RJR files another answer, once again, denying that any commission is due to Rural Commercial and once again, denying that it breached the commercial listing agreement. Now, in February 2019, RJR files a motion for summary judgment seeking to end the litigation. In that motion, it asked the court, the trial court, to find that no sale of the property had occurred and that no commission was due from RJR to Rural. RJR doubles down on that position in its motion for summary judgment reply when it includes the language, quote, in the case at bar, title is not transferred, the purchase price has not been paid, and a sale has not occurred. A commission on the sales price is not due, close quote. Trial court, however, denies RJR's motion for summary judgment. Subsequently, the parties end up filing cross motions for summary judgment. Now, when this happens, RJR now modifies its position, now claims that the purchase price of the property is $620,000 and that Rural is only due $31,000 in commission. And specifically, I think it's a great note that in response to Rural's motion for summary judgment, RJR admits that based on the trial court's ruling on its initial motion for summary judgment, that the breach of contract claim has merit. Now, in November 2019, we get what I would consider to be a very strange order. It strikes me as an order where the trial court was attempting to play Solomon in perhaps an instance where the trial court should not have, but what the trial court does is orders RJR to pay Rural Commercial just over $46,000 in equal installments over 60 months. That is the full amount of the commission that Rural sought in this case. The trial court gives RJR 30 days to make all retroactive payments going back all the way to March 2016, so approximately three and a half years, and the trial court reserves its ruling on the claim based on the broker lien. January 2020, a couple months later, we get an order denying both parties cross motions for summary judgment. That sets off a chain of events. What you're saying earlier about the court ordering the payment, did RJR object or make any statements about that along the lines you're now telling us? No, the position that RJR took in the second round of motion for summary judgment briefing is that it was only required to pay $31,000. I don't think RJR took the position. Three months later? I mean, RJR did nothing for months after the court ended that order. Isn't that right? That's correct. After that order comes out, I think RJR just took the position that it wasn't worth fighting over anymore. We'll make these payments. We'll make the retroactive payment. We'll make the monthly payments that the court has ordered. Subsequent to that order, that sets off a lot of filings over who's the prevailing party. Can we get attorney's fees? The answer that keeps coming down from the trial court is, well, we don't have a final judgment. Because of that, you end up having this October 2023 bench trial. At that trial, the letters from Mr. Wilson, the checks that RJR tried to send to rural commercial, they're admitted into evidence. John Wilson, the RJR officer, admits at trial that RJR's position was that the sale price was only $400,000. Mr. Wilson admits that Davis never made the balloon payment that was required under the contract to sale the property. Even at closing, at the bench trial, RJR continued to argue to the circuit court that it could find that no sale had taken place given that the full purchase price hadn't been paid and title had never been transferred to Dr. Davis. RJR also in its closing argument continued to press the argument that the commission was less than $46,000. I think the amount that it sought in its closing argument was $17,000 and change, and that was based on the amount that Dr. Davis had paid RJR. In November 2023, we get judgment from the circuit court. It once again holds that rule has established it's entitled to commission in excess of $46,000, the full amount required, but strangely it holds that rule had failed to establish that RJR had breached the commercial listing agreement. The trial court continues to adhere to the theory that these payments were due over time under the commercial listing agreement. That ruling is based on the absence of language, not actual any language in the contract, and the fact that rule was the drafter of the agreement. Trial court holds that the evidence demonstrated that RJR complied with the commercial listing agreement as construed. The court also holds that neither party is a prevailing party entitled to attorney's fees. So again, the trial court made three main errors in this case. Number one, it erred in interpreting the commercial listing agreement to mandate commission payments over a span of 60 months. It erred in holding that rule was not the prevailing party entitled to attorney's fees, and it also held that rule had not established a breach of the commercial listing agreement by RJR. That ruling is against the manifest weight of the evidence. I'll start with the commercial listing agreement and its interpretation. Again, the circuit court held on multiple occasions that under this contract, the commission payments are to be made over a 60-month period. And again, that holding is not based on any actual contractual language. In doing so, the circuit court relies on the absence of any specific provision and the fact that rule drafted the agreement. The problem with that holding is that the general rule on broker commissions is very clear, and it's the rule that the entire commission is earned once the produces a purchaser who is ready, willing, and able to purchase the property on the seller's terms. Nothing in the broker lien act changed that general rule or its application. And in the absence of any language in the agreement to the contrary, that's the rule that the trial court should have applied here. And I would point this court to the Schiller case that's cited in our reply brief, in which the court said, quote, the agreement here does not specifically state when the agreed, when the commission is earned. Thus, the contract is ambiguous as to this issue and the settled rule regarding when a broker is entitled to receive a commission applies. That is the rule that the circuit court should have applied here. And applying that rule, the only conclusion to come to is that rule was entitled to its commission when Davis and RJR put pen to paper and signed a contract for the sale of the property. Absolutely no language in the intended for rules commission to be paid over a 60-month period. And in fact, the language that does speak to this issue actually suggests that either the general rule or maybe a slightly modified version of it would apply. Because again, as I mentioned earlier, there is a specific provision on how the commission is to be paid when the property is leased. And that provision indicates that if the property is leased, there's just to be two payments, not payments over a span of 60 months or maybe however long the lease is, but just two payments. One, when the lease is signed and two, when the tenant occupies the premises. There is no reason to think that the parties intended a commission for the sale to go on and on and on over a span of five years, when the parties have agreed in their contract that the commission for a lease is going to be paid in full by the time the tenant gets into the building. The circuit court also relied on the fact that Dr. Davis was making monthly payments to RJR to justify RJR's monthly payments to rural. But that reliance is in error because there's no indication that the parties even attended that there was going to be a contract for sale that dealt with installment payments as opposed to one lump sum. So the only conclusion to draw from looking at this agreement, from looking at what the parties have done, it's that the commission that was owed to rule under the commercial listing agreement was owed either, number one, when the parties signed the contract, or at the very least, paying the second half when Dr. Davis took occupancy of the premises. And the circuit court's holding that these commission payments were due over time, over a period of five years, that was an erroneous holding. And it makes, it leads to the conclusion that the circuit court's rulings for RJR on counts one and two of the amended complaint are against the manifest weight of the evidence. Now with respect to the breach of contract claim, even if this court agrees with the circuit court that these payments were due over a span of 60 months, it still necessarily follows that there's a breach of contract here. And the reason is the circuit court orders $46,000 over 60 months. That comes to a monthly payment of $767 and change. That amount is significantly higher than what RJR was attempting to pay before this case was initiated. In fact, the last two payments that RJR attempted to make came out to approximately $122 and change, 16% of what the circuit court eventually ordered. And again, that's probably why RJR admitted during some of the motion for briefing that rules breach of contract claim had merit. And we know why these payments were so low. John Wilson's letters tell us, and it's because RJR was sticking to its guns and trying to claim that the purchase price was only $400,000, a position that the circuit court continually disagreed with during the course of this litigation. Now, in response to this argument in its brief, RJR takes the position that it increased its payments in May, 2016, when Dr. Davis started forking over more money. The only problem is not only is the record devoid of any evidence to support that, the evidence we have directly contradicts that argument. We have the letters from John Wilson. They cover the first three quarters of 2016. They show that the payment in May, 2016 is the same as the payment for April. There's no increase throughout any of those months in 2016. Nothing in the record that would indicate that any increase was coming. RJR was going to continue to pay peanuts until they got up to at most a $20,000 commission payment based on a purchase price of $400,000. So they were never going to catch up to the schedule that the circuit court ordered in November of 2019. Nothing in the record supports that. So again, even if this court decides that Rural's commission was payable over time, it still necessarily follows that RJR breached the agreement by failing to pay $767 in change a month. And so again, we've got a couple different errors by the circuit court finding that the commission is payable over time. That's an error. And it leads to this ruling that Rural has not established a breach of contract. That's against manifest weight of the evidence. Those issues, those errors lead the trial court to find that Rural is not a prevailing party entitled to seek attorney's fees. Now the parties disagree on standard of review when it comes to prevailing party. RJR seeks use of discretion, which is generally the applicable standard of review. Rural takes the position that de novo review is appropriate here for two reasons. Number one, the circuit court interpreted a contract, the commercial listing agreement, in determining whether to award fees. Number two, the circuit court also answered the legal question as to whether Rural Commercial was a prevailing party under the Broker-Lean Act. Regardless of what standard of review is applied, reversal is appropriate here. Two bases for Rural to obtain its attorney's fees in this case. One is the Broker-Lean Act. Two is the commercial listing agreement. And given the issues I've already addressed, there can be no other conclusion that Rural is the prevailing party in this matter. A litigant can be considered a prevailing party for purposes of a fee award when it's successful on any significant issue and achieves some benefit in bringing suit, receives a judgment in its favor, or obtains an affirmative recovery. Here, Rural filed a suit seeking a broker commission in an amount just over $46,000. RJR started this litigation taking the position that Rural was nothing. And at the end of the day, the trial court ruled that Rural Commercial was entitled to the full amount requested, $46,000 in change. Even in its closing argument in 2023, years after this case had been initiated, RJR was still taking the position that no sale had occurred. It was still taking the position that a very reduced commission amount should be awarded. At the end of the day, the trial court continued to rule that Rural Commercial was entitled to its full commission amount. Given that outcome, it necessarily follows that Rural is the prevailing party here. I've discussed at length the issue that Rural's commission payments not due over time. But even if it is, RJR has not cited any case law that would support a finding that Rural is not a prevailing party only because its payments are due over time and not in a lump sum. And on that issue, I would note that the November 2019 order that first orders RJR to make those monthly payments, it orders those retroactive payments going back to May 2016. RJR had to pay approximately 70% of that commission amount within 30 days of that order. The rest of the payments only took another 18 months to cover. And so that's another reason to find that even if, and your honors, I see that my time is up. Yes, counsel, you'll have an opportunity to address us again in rebuttal. Counsel for the appellee, you may commence your argument at this time. May it please the court, counsel. My name is Mackenzie Blau and I represent the appellee RJR Holdings. We are asking that this court affirm the circuit court's rulings on all three counts. And I would agree with Rural's counsel that the most pressing issue here today is the attorney fee issue, as that is one that has not been dealt with by any court so far. And as you've heard from the recitation of the facts, the rule has had its commission paid in full since 2021. And we're still here today, almost in 2025. And so clearly the main issue is on the attorney's fees and not the payment of the commission. For the broker lien issue, the, and actually to back up, it's actually been overpaid. The commission has been overpaid to rule by $4,000. $50,000 has been paid to rule. They have an extra payment. So the commission has been overpaid. And that is the main reason why the circuit court found that the broker lien must be extinguished. It has been paid in full and it should have been extinguished long ago back in 2021 when the full amount of the Now looking at the broker lien statute for a moment, you'll see that the broker lien statute is connected at always to the written instrument that's signed by the owner. And that would be the listing agreement. So the broker lien statute provides that a broker has a lien for the amount due under a written instrument signed by the owner. And so throughout the broker lien statute, it reinforces this written agreement requirement. And that is extremely important in this case because the written agreement had a lot of terms missing that could have helped prevent us being here today. And much of the litigation that has ensued in this case. Counsel, if I may, with regards to the act itself, it did seem that the trial court construed that there had been a change in the law, if you will. And it appears though, in looking at the act, it wasn't suggesting that all commissions had to be paid in installments, just that was permissible. How do you address the court's interpretation of that? Because it seems to suggest, at least the court's ruling seems to suggest there was a change in the law. So is your position that all of these commissions have to be paid in installments? No, your honor. Our position is that the broker lien statute did not change the law as it was prior to. Although, I mean, certainly to the certain things might have been changed that were actually explicitly laid out in the law. But in terms of paying in installments, I agree, it does not require that they be paid in installments. It simply is using that as a reference. If there's a situation where it is paid in installments, this is how it works. Our position in terms of the interpretation of that statute is that it lends a sort of industry norm or reasonable term that can be a gap filler or used by the circuit court to, because there was no term for the timing of the payment of the commission. If we can, the commercial listing agreement was from April of 2015. They don't sign the agreement for warranty deed until several months later, correct? Correct. And rule isn't a party. To the agreement for warranty deed, correct? Correct. And there's no indication in the record that at the time the commercial listing agreement was signed, that there were any discussions of whether he found a tenant or helped procure a purchaser, any discussion of installment payments. I don't find that in the record that that was presented as parole evidence or something with regards to the intent of the parties at the time the commercial listing agreement was signed. Is that accurate? That is accurate. The court found that there was no parole evidence presented at all for either side. Okay, so as we look at that, then also to kind of springboard into the next question, then as this court reviews matters, why should it be a deferential standard? Why should we not be looking at a de novo standard as suggested by appellate's counsel? Well, a couple of things to unpack there. Can I answer the question first about the interpretation of the payments? So our position is that because it was ambiguous as to when the payment was supposed to be paid, there wasn't any specific provision on that, although there was a provision on that if there was a lease. So there was no on how it was to be paid for a sale, but there was specific provisions on timing when it came to a lease. Because it was ambiguous and it was drafted by rule, the court construed the ambiguities most strongly against rule and came up with a term that is reasonable based on it being referenced in the broker lien statute that there are installment payments. So it is somewhat up to industry norms in terms of people paying installment payments. So that's why I guess I'd pause there. I don't think the customary norm for real estate brokers is to take their commission over time or only under a contract for deed when a sale works out. I mean, most of the time those are paid on a sale at closing. And even with a contract for deed, the purpose of procuring the listing agent, their whole purpose is to help you find the buyer or the tenant. So their work is somewhat done by the time you're putting pen to paper, isn't it? Well, in this case, the listing agreement was signed in April and I don't believe that anything was found until, was it November? But it was during the period of the time. But again, these are all things that rule could have included in their listing agreement that says, hey, we don't care if you pay over 10 years, the lump sum payment is due at the time you sign that contract. And it doesn't matter if you pay in installments or if you're paying cash right at closing, like it's due at the time you sign. This all could have been covered by rule who has, I mean, I know it's a brokerage company that has experience in listing agreements and brokerage and real estate in that area for many years and could include that in the listing agreement and nothing to that effect was included. And the silence of it in terms of the sale is sort of deafening because it was included in the context of a lease. And let me just speak for a moment on, there was a reference to, oh, well, if we were going to say that they were anything was intended at the time of contracting, then why wasn't it just the two payments that the lease that was provided for in the event of a lease? Well, if you look at that, though, it doesn't make it quite as much sense as you'd think, because if you look at the commission was a 6% on the net lease of the initial term. So if that's both floors, that's $4,500 per month. You do an initial term of 12 months, that's $54,000. And 6% of that is just a little over $3,200. They were going to divide $3,200 up into two payments. But then they expected it to be the intention of all the parties that a $46,000 commission was supposed to be paid in a lump sum, but they're going to divide up a $3,200 payment into two $1,600 payments. That just seems absurd that you would have such a small payment amount in the event of a lease in such a large lump sum requirement of payment at the time of a sale. I want to focus a moment on the cases that were cited in support of this notion that there's this default rule that tells us when commission payments are to be paid. None of those cases support a default rule for when they're at to be paid. They do state when they are to be earned, but when you look at the agreements in each case, they all cover not only when the commission is earned, or in a couple of them they don't, and then they go to find the default rule, which appellant has spoken to, but they also spoke to when the commission was to be paid. So it doesn't apply here when we don't have when the commission is to be paid. And that's the term that we're looking for. And when you look at what the word earned means, in Black's Law Dictionary, it's like an entitlement or a right to something whether it's been received or not. And so you don't get paid after each day of work. You may have earned that wage, but you don't get paid until every two weeks or the month. And so it doesn't mean the same thing. And that's why many of the contracts that issues in these cases have a provision that speaks to both issues of when is it earned, which is super important in the Zink case and in the Schiller case, because those are not even dealing with a buyer or an owner and a broker. They're dealing with a brokerage firm and a broker. And when the broker gets their share of the commission's from their brokerage firm. So a lot of them are not really applicable in this situation. As to the breach of the contract issue, the court in 2019, not only did they rule that RJR must pay the $46,000 commission over 60 months, but they also said that RJR would not be in breach of the listing agreement if they made those payments. And there is no dispute here today that RJR made those payments subject to that November 2019 order that was entered by the circuit court. The circuit court has also entered orders in this case, stating that really the gist of this case has been all along when the payments are due. And if you look at some of the testimony in this case by the Ray, and I'm not sure how to pronounce his last name, Ospig, or he testifies that we wouldn't be here today if they would have just paid it on time, if they would have paid it on time. And so while Rule did get the full amount of the commission, they did not get it the way that they wanted it. They wanted it in a lump sum. And there's been, as Rule has argued earlier, RJR did up until 2019, and I guess at trial afterward, but after they were paying the commission in full, doesn't seem to matter whether they're disputing the full amount at that point. And for years, Rule has had its full commission. So any dispute about the amount of the commission now just seems in the past and rather moot because it's just been paid. But the standard of the review here is clear. The cases that are cited in the brief support this, that it is abuse of discretion. And that makes sense because the circuit court has had a position that none of us on video, at least here, had, which was they were at the trial, they were throughout the circuit court proceedings. They have a perspective on the various claims and arguments that have been made over this many year long case. And so they are in the best position to determine who would be the prevailing party if there was one in this case. And that's why the standard of review should be abuse of discretion. And there is nothing arbitrary, fanciful, or unreasonable about the court's determination that neither party was entitled to attorney's fees because neither party was the prevailing party. There were two issues at play in this case, the timing and the amount of the payment. The full amount has been paid since 2021 and payments started in 2019. And Rule won on that, but they lost on the second half of the issues, the timing of the payment. And they also had the listing agreement construed against them as the drafter. And so I think when you take that all, it's a draw. And neither party was the prevailing party in this case. And I will ask if the court has any further questions. Otherwise, I will defer. Well, I see none, counsel. Thank you for your argument on behalf of the appellate and the rebuttal argument at this time, sir. Yes, thank you, Justice Steigman. I'll attempt to be brief. I certainly won't disagree with Ms. Blau that a lot of the issues in this case could have been nipped in the bud had there been some additional language in the commercial listing agreement. But that does not change the fact that in the absence of any specific provisions in the default rule, which is that a broker commission is earned when it produces the ready, willing, and able buyer. That is exactly what Rural Commercial did here, did everything they needed to do to set this deal, put it in place. They should have been entitled to receive their full commission when that contract for the sale of the property was signed. There certainly was language in the Circuit Court's November 2019 order about RJR only being in breach of the contract if it failed to make the monthly payments that had been ordered. The problem with that is that there's no legal basis for that ruling. Either RJR is in breach of the contract or it isn't. As established by the minimal amounts it was attempting to pay before litigation was initiated and the Circuit Court's order that RJR pay $767 and change per month, it necessarily follows that there was a breach and the trial court should have found as such. Again, I think this seems like a situation where the trial court tried to play Solomon, said I'll give Rural its full commission, but I'm going to make it payable over time, there's going to be no breach, maybe we get this thing resolved. Problem is, that position's not legally supportable by the evidence that was presented to the court. There's also this reference, and I think this comes up in the court's ultimate judgment, that this case, that the gist of the party's dispute is and always has been about the timing of these payments. That is a fiction that unfortunately the trial court adopted in its analysis. I've been able to detail for this court numerous instances where RJR took the position that either no commission was due or that the commission was in a much, much smaller amount. This has not been a case that has been focused solely on the timing of the payments. It's been in large part on whether RJR was going to pay a commission at all, and if so, in what amount. As to the prevailing party issue, again, regardless of what standard of review this court applies, I think reversal is appropriate here. RJR has not cited any cases where a plaintiff recovered the full amount it sought, but was deprived of prevailing party status merely based on the timeline of those payments. The cases that RJR does cite in its prevailing party analysis are easily distinguishable here. One is the Raffle case where the plaintiff recovered just 14 percent of the amount that it was seeking. The other is the Med Plus case where the plaintiff recovers nominal damages after seeking over $120,000. Here, much different scenario, rural commercial file suit for $46,000. It is awarded every penny that it asks for. The circuit court erred. The circuit court abused its discretion in refusing to find that rural was the prevailing party. That was a conclusion that was in reliance on its initial, its prior legal analysis on the contract and the breach of contract, which was riddled with errors. I can see certainly how the circuit court came to that conclusion. When you look at all the errors that the circuit court made in this case, there's only one conclusion to draw. It's that rural not being named the prevailing party is an error. It is an abuse of discretion. Again, we would ask this court to reverse, to find, to instruct the trial court to find that rural commercial is under judgment in favor of them, find that they're prevailing party so that we can set a hearing and tackle the issue of costs and attorney's fees. Unless this court has any questions, I'll conclude my comments and thank you for your time. Thank you, counsel. This court will take this matter under advisement and we will stand in recess at this time.